UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| RUSSIAN MEDIA GROUP, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| | ) | No. 06 C 3578 |
| v. | ) ) | |
| | ) | Judge John W. Darrah |
| CABLE AMERICA, INC. and SHAI HARMELECH, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Russia Media Group, LLC, ("RMG"), brings this suit against Defendants, Cable America, Inc. and Shai Harmelech, alleging: violation of the Illinois Cable Piracy Act ("ICPA"), 720 ILCS § 5/16-18 et seq.; violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/1 et seq.; violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS § 510.1 et seq.; and tortious interference with prospective economic advantage. This Court has jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Defendants have moved to dismiss all counts of Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

### BACKGROUND

Plaintiff, RMG, sells Russian-language satellite programming to tenants of apartment buildings in Chicago and nationwide. RMG's programming is either self-produced or distributed pursuant to agreements with Russian content providers. Defendant Cable America also sells Russian-language television programming to residents of apartment buildings in Chicago.

Defendant Shai Harmelech is the sole owner and chief officer of Cable America. RMG alleges that Cable America obtains its programming illegally, by reselling channels offered by DishNetwork and DIRECTV, two providers of satellite-transmitted television service. Specifically, RMG alleges that Cable America purchases individual retail accounts from DishNetwork and DIRECTV and then, without license or authorization, resells the programming by wiring the activated receiver to other apartments in the building.

As a result of these methods, Cable America is able to sell the illegally obtained programming at substantially discounted prices. Cable America's below-market prices have induced RMG subscribers to terminate their contractual relations with RMG and have induced certain property managers to enter into exclusive arrangements with Cable America, excluding RMG from those buildings.

RMG seeks injunctive and monetary relief against Cable America and Harmelech.

## LEGAL STANDARD

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the

grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Serv., Inc.* 496 F.3d 773, 776 (7th Cir. 2007) (*Concentra*) (quoting *Bell Atlantic Corp. v. Twombly*, __ U.S. __, __, 127 S. Ct. 1955, 1964 (2007) (*Bell Atlantic*)). The allegations made in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Concentra*, 496 F.3d at 776 (citing *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n. 14).

## ANALYSIS

### *Illinois Cable Piracy Act - Count I*

The parties' dispute regarding Count I of Plaintiff's Complaint, violation of the ICPA, is whether the applicable statute-of-limitations period has run. The ICPA provides for both criminal and civil liability but does not, itself, specify the time in which the actions must be brought. *See* 720 ILCS 5/16-20, 21. Defendants argue that the relevant statute of limitations is provided in 720 ILCS 5/3-5, which provides that a criminal prosecution for an offense must be commenced within three years if the offense is a felony and within one year and six months if the offense is a misdemeanor. 720 ILCS 5/3-5. Defendants apparently reason that because a violation of ICPA also constitutes a misdemeanor, the criminal statute of limitations must apply. Plaintiff argues that 735 ILCS 5/13-205, which provides in part, "all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued," sets out the relevant limitations period. 735 ILCS 5/13-205. Because this is a civil case rather than a criminal prosecution, 735 ILCS 5/13-205 provides the appropriate limitations period – in this case, five years.

Defendants cite *Comcast of Illinois S., LLC v. Toguchi*, 2006 WL 516578 (N.D.Ill. 2006) (*Toguchi*), in support of their position that an 18-month statute of limitations should apply to actions brought under the ICPA. *Toguchi* does not support Defendants' position, as it makes no mention of employing 720 ILCS 5/3-5 to determine the relevant statute of limitations for the ICPA. Nor did the *Toguchi* court conduct its own analysis to determine the statute of limitations for a claim under the ICPA. Rather, the court relied on the parties' agreement that the limitations period was *at least* three years. *Toguchi*, 2006 WL 516578 at *2.

Plaintiff brought suit in June of 2006. Plaintiff alleges that Cable America's tortious conduct began on January 1, 2003, and is ongoing. Because a five-year statute-of-limitations period applies to Plaintiff's ICPA claim, all of Defendants' complained of conduct falls within the applicable limitations period.

*Illinois Consumer Fraud and Deceptive Business Practices Act - Count II*

Defendants challenge Count II of Plaintiff's Complaint, violation of the ICFA, arguing that Plaintiff has not pled, or has not pled with the required specificity, all the elements of a claim under the ICFA and, furthermore, that Plaintiff lacks standing to bring the claim.

The ICFA is "intended to protect customers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corporation*, 201 Ill.2d 403, 416-17 (2002) (*Robinson*). A plaintiff may recover for unfair, as well as deceptive, conduct. *Robinson*, 201 Ill.2d at 417. Plaintiff seeks to recover for both unfair competition and for deceptive statements.

The factors a court must consider in determining whether a course of conduct or act is unfair under the ICFA are "(1) whether the practice offends public policy; (2) whether it is

4

immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson*, 201 Ill.2d at 417-18. A practice need not meet all three criteria; rather, it may be judged to be unfair "because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 201 Ill.2d at 418 (quoting *Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 106 (1992)). Defendants' course of conduct, as alleged by Plaintiff, meets at least the first two criteria. The resale of pirated television violates public policy, as demonstrated by the civil and criminal penalties provided in the ICPA. The conduct is also immoral, unethical, and unscrupulous. Thus, Defendants' conduct, as alleged by Plaintiff is unfair under the ICFA.

Plaintiff also alleges that Defendants' conduct was deceptive. "To succeed in a private cause of action under the [ICFA], a plaintiff must prove (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence or deception in the course of conduct involving trade or commerce, and (4) actual damages to the plaintiff, (5) proximately caused by the deception." *Clark v. Experian Information, Inc.*, 233 F.R.D. 508, 511 (N.D.Ill. 2005) (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100 (2005)). Courts have allowed businesses to sue under the ICFA for competitive injury when other businesses deceive customers. *See e.g. Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.*, 657 F.Supp. 1486 (N.D.Ill. 1987); *Empire Home Services, Inc. v. Carpet America, Inc.*, 274 Ill.App.3d 666 (4th dist. 1995). In such situations, there is no requirement that the deceptive conduct be aimed at the plaintiff. *See Recreation Services, Inc. v. Odyssey Fun World, Inc.*, 952 F.Supp. 594, 597 (N.D.Ill. 1997) (*Recreation Services*) (where an ICFA claim is

5

asserted by a business competitor "it clearly makes no sense to require that the plaintiff competitor itself must have relied on the deception").

Defendants argue that Plaintiff fails to state a claim under the ICFA because the Complaint either does not allege necessary elements of such a claim or does not plead them with the required specificity. Defendants, citing *Connick v. Suzuki Motor Company, Ltd.*, 174 Ill.2d 482 (1996) (*Connick*) and *White v. DaimlerChrysler Corporation*, 369 Ill. App.3d 278 (1st Dist. 2006) (*White*), argue that a complaint alleging a violation of the ICFA must plead with the same particularity and specificity that is required to allege common-law fraud. Defendants assert that Plaintiff's Complaint contains no allegations of deceptive representations to identified customers and no allegations that Defendants intended customers to rely on those statements. Furthermore, Defendants allege, the Complaint does not state its damages with sufficient particularity.

Courts have recognized that not all actions under the ICFA need to be pled with the particularity required by Federal Rule of Civil Procedure 9(b). *See Recreation Services*, 952 F.Supp. at 597 (the "broader scope" of the ICFA "negates any need to satisfy the particularity pleading requirements of Rule 9(b) where the gravamen of a federal court claim does not lie in actual fraud"). The two cases cited by Defendants in support of the heightened pleading requirement dealt with actions brought under the ICFA by consumers. *See Connick*, 174 Ill.2d at 501-03 (purchasers of defendant's vehicles brought an action under the ICFA, alleging fraudulent statements); *White*, 369 Ill. App.3d at 281 (purchasers alleged concealment of defect in vehicle parts by manufacturer). In this case, Plaintiff alleges that Defendants' deceptive conduct was directed not at Plaintiff but at others. It is unrealistic to expect that a plaintiff in this

situation will be able to specify in exact detail what deceptive statements the defendants have made.

Plaintiff has alleged that Defendants purchase and then illegally resell programming distributed by two satellite television providers. Plaintiff has alleged that the consumers who purchase this programming from Defendants have been deceived by Defendants into paying for services that Defendants are not authorized to provide. Furthermore, Plaintiff has alleged that Defendants have induced Plaintiff's subscribers to terminate their service and have caused others to enter into exclusive agreements with Defendants. Plaintiff lists a number of apartment buildings where this has allegedly occurred. These allegations are sufficient to plead a claim under the ICFA.

Finally, Defendants argue that Plaintiff does not have standing to assert a claim under the ICFA because Plaintiff is not a consumer and does not meet the requirements of the "consumer nexus test." "[W]hen both parties to the suit are commercial entities which are not consumers 'the test for standing is whether the alleged conduct invokes trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'" *Stepan Co. v. Winter Panel Corp.*, 948 F.Supp. 802, 805-06 (N.D.Ill. 1996) (*Stepan*) (quoting *Lefebvre Intergraphics, Inc. v. Sandem Machine Limited*, 1996 WL 718189 at *9 (N.D.Ill. 1996)). The *Stepan* court explained that courts have continued to find an inherent consumer nexus requirement in the ICFA due in part to the concern that without such a requirement, "contract law would be subsumed by causes of action brought under the [ICFA]." *Stepan*, 948 F.Supp. at 806. Here, the consumer nexus is clearly satisfied. Defendants' practices, as alleged by Plaintiff, are addressed to the market generally and implicate consumer protection concerns. It is only by deceiving

consumers into purchasing a service Defendants are not authorized to sell that Defendants are harming Plaintiff. Thus, Plaintiff has standing to bring a claim against Defendants under the ICFA.

*Uniform Deceptive Trade Practices Act - Count III*

Plaintiff has alleged that Defendants have violated the UDTPA. The UDTPA provides in part:

> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
>
> ***
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;
>
> ***
>
> (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have.

815 ILCS 510/2.

Defendants' argument on Count III is limited to the argument that the Complaint does not allege that Defendants have made any misrepresentations or caused any confusion. However, Plaintiff has alleged that Defendants resell DIRECTV and DishNetwork programming without authorization and that Defendants deceive consumers in the process. Such behavior could certainly cause "a likelihood of confusion or of misunderstanding" as to at least the "source," "approval," and "association" regarding the services provided by Defendants. Defendants'

8

alleged conduct also could constitute representations that their services have "approval" that they do not and that Defendants have "approval . . . affiliation, or connection" that they do not have. Therefore, Plaintiff states a claim under the UDTPA.

*Tortious Interference with Prospective Business Advantage - Count IV*

To state a claim for tortious interference with a prospective economic advantage, a plaintiff must allege: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional and malicious interference inducing or causing a breach of termination of the relationship or expectancy; (4) resultant damage to the party whose relationship has been disrupted. *Small v. Sussman*, 306 Ill. App.3d 639, 648 (1st Dist. 1999). "The acts that form the basis of tortious interference must be directed at parties other than the plaintiff." *Continental Mobile Telephone Company, Inc. v. Chicago SMSA Limited Partnership*, 225 Ill. App.3d 317, 325 (1st Dist. 1992). Plaintiff may allege a prospective class of third parties against whom the conduct was directed rather than identifying specific parties by name. *See Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill.App.3d 524, 529 (2d Dist. 1989).

Defendants argue that Plaintiff has not alleged any facts establishing that prospective customers intended to do business with Plaintiff, has not alleged that Defendants lack a valid business purpose and has not alleged that Defendants' interference is directed towards third parties. These arguments are without merit. Plaintiff has alleged that certain customers have terminated their contractual relationships with Plaintiff to subscribe to Defendants' service.

Plaintiff has also sufficiently alleged that Defendants lack a valid business purpose. Defendants' resale of pirated programming may not constitute a valid business purpose. Finally, Plaintiff has sufficiently alleged that Defendants' conduct is directed against third parties, specifically, the consumers of Defendants' allegedly pirated programming.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied.

Dated: February 7, 2008

JOHN W. DARRAH
United States District Court Judge

10