UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUSSIAN MEDIA GROUP, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 3578 |
| v. ) | |
| ) | Judge John W. Darrah |
| CABLE AMERICA, INC., d/b/a ) | |
| SATELLITE AMERICA and ) | |
| SATELLITE OF AMERICA; and ) | |
| SHAI HARMELECH, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND PRELIMINARY INJUNCTION ORDER

Before the Court is Plaintiff Russian Media Group, LLC's ("RMG") motion for preliminary injunction against Defendants Cable America, Inc. and Shai Harmelech, the sole owner and chief officer of Cable America. RMG seeks to enjoin Defendants from providing illegally acquired Russian-language programming to residents of several properties in Illinois and Wisconsin (the "Subject Properties"). A hearing was held on June 26, 2008 and the Court has considered the testimony of the witnesses, the exhibits received into evidence and the parties' post-hearing briefs.[1]

---

[1] Both sides have filed motions to bar evidence. Defendants have moved to bar RMG from using excerpts from depositions of Harmelech and the declaration of Maurice Guyen. Defendants argue: (1) that RMG could have cross-examined Harmelech during the June 26 hearing and, having failed to do so, should not be permitted to rely on his previous deposition testimony; and (2) that because Guyen did not testify at the hearing, his declaration should be stricken. With respect to Harmelech's deposition testimony, Defendants' argument ignores the Court's instruction at the June 26 hearing. In the interest of expediting the hearing, the Court stated that it would allow party admissions to be included in the post-hearing briefs. With respect to the admission of Guyen's declaration, Defendants have waived their objection. Counsel for RMG stated that he would not call a different witness at the hearing, if he could use the uncontested affidavits of Guyen. Defendants' counsel did not object at that point and has, therefore, waived any objection to the declaration.

## FINDINGS OF FACT

RMG sells Russian-language satellite programming to tenants of apartment buildings in Chicago and nationwide. Cable America competes with RMG in those sales by illegally reselling Russian-language programming taken without authorization from DIRECTV and DishNetwork satellite receivers as follows:

---

Plaintiff has moved to bar Defendants' Injunction Exhibits ("DIX") 20 and 24-28 because the documents were not produced in discovery. DIX 20 is a list of Cable America's customers at 170 W. Oak St., one of the Subject Properties. Each entry contains an account number, an apartment number and the name of a Cable America customer, which is listed under the heading "Bill To." On September 6, 2006, RMG requested that Defendants produce "All Documents that Relate To any payments made to Defendants by any person receiving Russian language television from Defendants . . . ." In response, Defendants produced no documents, claiming that they do not sell Russian-language programming. This argument is meritless and DIX 20 was clearly responsive to this and other discovery requests by RMG. Therefore, RMG's motion to bar DIX 20 is granted.

DIX 24-28 are incomplete right of entry agreements between Cable America and some of the Subject Properties. On February 16, 2007, RMG requested that Defendants produce "All Right of Entry Agreements between defendants and any of the properties." Though responsive to this request, DIX 24-28 were not produced to RMG until the day before the preliminary injunction hearing. Therefore, RMG's motion to bar DIX 24-28 is granted.

Plaintiff has also moved to strike the portion of Harmelech's testimony in which Harmelech refers to contracts he has with DIRECTV and DishNetwork and to bar the contract Defendants produced on June 27, 2008, the day following the hearing. After arguing throughout this litigation that Defendants do not provide Russian-language television, Defendant Harmelech changed course at the end of his testimony at the hearing and argued that he was, in fact, authorized by DIRECTV and DishNetwork to provide such programming to tenants in the Subject Properties. In response to the Court's order to provide evidence of such authorization, Defendants produced a contract between DIRECTV Master Systems Operator and USA Satellite & Cable, Inc. (not Defendant Cable America). Contrary to his testimony at the preliminary injunction hearing, Defendant Harmelech testified at his deposition that there was no relation between Defendant Cable America and USA Satellite & Cable, Inc. The contract purports to authorize Defendants or related entities to provide Russian-language television service to the Subject Properties and, thus, was responsive to RMG's discovery requests. Therefore, RMG's motion to bar the contract and related testimony by Harmelech is granted.

2

At each of the Subject Properties, Defendants have installed DIRECTV or DishNetwork receivers that were provided to Defendants by individual residents who have single-user retail accounts.

Defendants connected those receivers to the master antenna system in each property in such a way that those receivers transmit Russian-language television programming throughout the buildings.

Defendants charge a monthly fee to the tenants who receive that programming through the master antenna system.

Defendants do not have authorization from DIRECTV or DishNetwork to sell Russian-language programming and do not pay DIRECTV or DishNetwork any portion of the fees they receive from their customers.

RMG has lost business as a result of Defendants' distribution of Russian-language programming: only 23 percent of the potential subscribers in buildings where Defendants operate enlist with RMG, compared with 92 percent in similar buildings in which Defendants' programming is not available. Additionally, some buildings have completely excluded RMG because they prefer to have only one provider of Russian-language programming.[2]

Defendants' claim that they merely provide maintenance service is unsupported and contrary to the evidence. Defendants' subsequent claim that they were in fact authorized to sell

---

[2]With respect to one of the Subject Properties, 600 West Diversey, for which RMG has no direct evidence as to why RMG's contract at the property was terminated, the timing of RMG's termination and Defendants' entry of the property strongly supports an inference that Defendants' arrival was the cause.

3

the programming is likewise unsupported by and contrary to the evidence.[3] Defendants' testimony, including denials and explanations in this regard is unpersuasive and completely lacking in credibility.

## CONCLUSIONS OF LAW

A court may issue a preliminary injunction only if three elements are met: (1) some likelihood of success on the merits, (2) an inadequate remedy at law, and (3) irreparable harm if the injunction is not issued. *Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001) (*O'Bannon*). If these elements are met, the court must balance the harm the parties will suffer and consider the public interest in the grant or denial of injunctive relief. *O'Bannon*, 259 F.3d at 770. RMG seeks injunctive relief pursuant to three statutes: the Illinois Cable Piracy Act ("ICPA"), 720 ILCS 5/16-18, *et seq.*; the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*; and the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS 510/1, *et seq.*

Under the ICPA, "[a] person commits an offense if he or she knowingly . . . obtains or uses a communication service without the authorization of, or compensation paid to, the communication service provider, or assists or instructs any other person in doing so with intent to defraud the communication service provider." 720 ILCS 5/16-19(1). Furthermore, "[a]ny person aggrieved by a violation of Section 16-19 may bring a civil action in any court of competent jurisdiction." 720 ILCS 5/16-21(a). A court may grant an injunction in order to restrain

---

[3]Defendants have abandoned this argument in their post-hearing brief.

4

violations of the ICPA without a showing of irreparable harm or inadequacy of other legal remedies. 720 ILCS 5/16-21(b)(1). Therefore, the questions before the Court are whether RMG has some chance of success on the merits and whether RMG is an aggrieved party.

## DECISION

Plaintiff has made an adequate showing of the elements necessary for the issuance of a preliminary injunction against Defendants. There is no credible evidence that Defendants have not violated the ICPA. Defendants admit they have connected DIRECTV or DishNetwork receivers in such a way that their customers can access Russian-language channels without paying those providers for the content. Defendants are not authorized to do this and charge their customers a fee to maintain the connection. As mentioned above, Defendants first vigorously contended at the hearing that they did not provide Russian programming as claimed. Later, they admitted doing so but claimed, without support, that they did so pursuant to an agreement with another Russian program provider. Defendants clearly violated the ICPA, and Defendants' post-hearing brief makes no argument that they have not.

Defendants do, however, contend that RMG has not established that it was harmed by Defendants' actions, essentially that RMG is not an aggrieved party under the ICPA. With respect to the fourteen Subject Properties at which both RMG and Defendants offer service, Defendants argue that RMG has introduced no evidence that Defendants were responsible for RMG's loss of customers. With respect to the remaining Subject Properties – those at which RMG no longer offers service – Defendants argue that RMG was either excluded from the

properties before January 1, 2003,[4] or cannot show that Defendants were responsible for the exclusion.

RMG has met its burden of showing itself to be an aggrieved party. RMG has offered convincing evidence that competition from Defendants has damaged RMG's business. As found above, RMG's penetration rates are sharply lower at those properties at which Defendants also offer service and RMG has been completely excluded from other buildings. Defendants' argument that RMG was excluded from some properties before January 1, 2003 and that those properties should, therefore, be excluded from this litigation is not convincing. Defendants' service is not a one-time event but, rather, a continuing violation of the ICPA and their continued presence at those properties continues to harm RMG's business opportunities.

Consideration of the harms facing RMG and Defendants weighs in favor of granting a preliminary injunction. Defendants' unfair competitive actions in violation of the ICPA have drastically reduced RMG's subscription rates in several properties and have caused RMG to be shut out from others. An injunction would likely reverse these harms. By contrast, an injunction would cause Defendants no cognizable harm, as they have no legitimate interest in continuing their unauthorized resale of Russian-language programming. Because it would promote free competition in compliance with the law, an injunction would also be in the public interest.

Defendants' argument against the issuance of an injunction is that Plaintiff's suit is barred by *res judicata*. Defendants' argument stems from a case between the parties litigated in state court, which was resolved in August 2001. The issue of *res judicata* was the subject of a motion

---

[4] Plaintiff has stipulated that the conduct at issue in this case occurred from January 1, 2003 to the present.

for summary judgment previously filed by Defendants. This Court denied that motion on February 27, 2007 with leave to refile after RMG filed a more definite statement as to the time of the conduct of which it complained. The statement subsequently filed by RMG specified that the conduct complained of began on January 1, 2003. Thus, the conduct complained of is not identical to the conduct at issue in the state-court proceeding, which occurred over a year earlier.

Because an injunction will issue under the ICPA, it is unnecessary to consider whether RMG could also prevail under the ICFA or the IUDTPA.

IT IS THEREFORE ORDERED that Defendants Shai Harmelech; Cable America, Inc.; Defendants' owners, officers, directors, agents, employees, successors, and assigns; and all individuals or entities controlled by Defendants or in active concert or participation with Defendants are preliminarily enjoined and restrained from distributing, transmitting, causing the distribution or transmission of, or maintaining any system that distributes or transmits Russian-language television programming to any of the tenants residing in the Subject Properties.

IT IS FURTHER ORDERED that Defendants Shai Harmelech and Cable America, Inc. shall disconnect any receivers in the Subject Properties that distribute or transmit Russian-language television programming that were installed or are maintained by Defendants Shai Harmelech; Cable America, Inc.; Defendants' owners, officers, directors, agents, employees, successors, or assigns; and any individuals or entities controlled by Defendants or in active concert or participation with Defendants.

The matter is continued to February 24, 2009, at 10:00 a.m. for determination as to the amount of bond, if any, to be posted by Plaintiff and for setting a hearing on the issuance of a permanent injunction.

Dated: February 19, 2009

JOHN W. DARRAH
United States District Court Judge