# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 3578 | **DATE** | 10/21/10 |
| **CASE TITLE** | Russian Media Group, LLC v. Cable America, Inc., et al. | | |

**DOCKET ENTRY TEXT**

Sanctions for Defendants' civil contempt are imposed as set out below.

■[ For further details see text below.]  Docketing to mail notices.

## STATEMENT

     On June 30, 2006, Plaintiff Russian Media Group, LLC brought suit against Defendants Cable America, Inc. and Shai Harmelech, seeking to enjoin Defendants from their allegedly unlawful distribution of Russian-language television programming at certain properties (the "Subject Properties"). On June 26, 2008, the Court held a preliminary injunction hearing and, on February 19, 2009, entered an injunction, barring Defendants from distributing Russian-language programming to the Subject Properties. A clarified preliminary injunction was entered on March 6, 2009. On May 12, 2009, the Court granted a motion by USA Satellite & Cable, Inc. ("USA Satellite") to intervene as the successor in interest to Cable America, Inc.

     On May 5, 2009, the Court held Defendants in contempt but did not provide a sanction. Defendants appealed the Court's issuance of the preliminary injunction, and consideration of several motions remained pending during the appeal. On June 24, 2010, the Court ordered civil contempt sanctions be imposed on Defendants of (1) $57,416.09 for attorneys' fees and costs; and (2) "all amounts received by Defendants from subscribers for their continued distribution of Russian-language programming after February 19, 2009 in violation of the preliminary injunction." Plaintiff was ordered to provide an accounting of this latter amount within 28 days. Plaintiff provided an accounting, and the parties have each filed an additional brief as to the proper sanction. Plaintiff's accounting determines that amount by the following method.

     From the day the injunction was issued, February 9, 2010, until Defendants' receivers were disconnected, between May 7, 2009 and May 29, 2009, Defendants received subscriber payments totaling $80,664.67. Plaintiff acknowledges that some payments received during this time period were for service provided before the injunction was issued. However, some of the services provided during this time period would not have been paid until after May 2009. Plaintiff suggests that these amounts cancel out and that the Court should use $80,664.67 as the amount of money Defendants received from subscribers for programming after February 19, 2009.

     Plaintiff next attempts to calculate what portion of this revenue was received for Russian-language programming, as opposed to non-Russian-language programming, which Defendants also provide. To do this, Plaintiff looks at Defendants' monthly collections after August 2009, by which time Plaintiff assumes

Defendants would have received all payments for Russian-language programming. From September 2009 through April 2010, Defendants received approximately $2,235 per month for non-Russian-language programming. Assuming Defendants also received this amount during the time that they were violating the injunction, February 19, 2009 through May 2009, Plaintiff calculates that $6,705 ($2,235/month x 3 months) of the $80,664.67 collected during that time was for non-Russian-language programming. That would leave $73,959.67 as the amount Defendants collected from subscribers for the distribution of Russian-language programming in violation of the preliminary injunction.

Defendants respond that they received only $18,310.88 for the continued distribution of Russian-language programming after February 19, 2009. Furthermore, Defendants argue that the proper sanction is not revenue but rather profit, which they claim is only $1,924.47. Notably, Defendants do not challenge Plaintiff's figures for Defendants' gross receipts for Russian and English language combined during the various time periods.

Defendants offer two alternative calculations of how much of their revenue came from Russian language programming between the entry of the injunction and the disconnection of the receivers. First, Defendants argue that 22.7 percent of their monthly programming costs are attributable to Russian-language programming. This figure is based on estimates of monthly cost at each Subject Property. Alternatively, Defendants look to the percentage of receivers that are dedicated to Russian-language channels. Of a total of 466 receivers, only 72, or 15.4 percent, are dedicated to Russian-language channels. Using the higher percentage, Defendants calculate that their revenues for Russian-language programming after the injunction was entered are $18,310.88, or 22.7 percent of $80,664.67.

There are at least two flaws with Defendants' methodology. First, it assumes that there is a link between costs and revenues. While this might ordinarily be the case, Defendants' business model during the relevant time period was to illegally sell the input from one Russian-language satellite receiver to multiple customers. Thus, Defendants' revenues for Russian-language programming has no relation to their costs since Defendants could resell the same signal multiple times without incurring extra costs. Second, as pointed out by Plaintiff, Defendants' figures are unrealistic, given the precipitous fall-off in revenue after the Russian-language receivers were disconnected in May 2009. While they were supplying Russian-language programming, Defendants were collecting more than $20,000 per month from customers in the Subject Properties. Once they ceased supplying Russian-language programming, their monthly revenues fell to just over $2,000. These figures, which are not disputed, are not consistent with Russian-language programming having accounted for only 22.7 percent of Defendants' revenues. Defendants seek to explain this inconsistency by arguing that their revenues from English-language programming have fallen off since they are facing new competition. However, they offer no evidence of a decrease either in number of subscribers or in their rates, information Defendants could have submitted, had it supported their argument.

The Court finds that Plaintiff's method of calculating total revenues from February 19, 2009 until the Russian-language receivers were disconnected in May 2009 is reasonably reliable. This finding is based on Defendants' failure to factually dispute Plaintiff's figures for Defendants' revenues and Defendants' failure to raise any convincing objection to Plaintiff's straightforward methodology. As explained above, the Court finds that Defendants' methods of calculating revenues from Russian-language programming during the relevant time period is unreliable. Therefore, the Court finds that Defendants collected $73,958.67 for the distribution of Russian-language programming in violation of the preliminary injunction.

Defendants also argue that the proper monetary sanction should measure their profits, not their gross revenues. Even if this were so, Defendants' calculation of their profit, $1,924.47 of $73,958.67 in gross revenue, is unreliable. Defendants offer the declaration of Allen Jacque, CFA, in support of their profits figure. However, the declaration computes Defendants' profits for Defendants' business as a whole rather than its profits for its Russian-language programming. As noted, because of the nature of that programming –

| STATEMENT |
|---|

multiple unauthorized sales of the signal from a single dish – Defendants' distribution of Russian-language programming could be expected to be far more profitable than other aspects of the business.

Furthermore, Defendants deduct their legal costs, including costs in defending this suit, from their revenues to calculate their profits. As Plaintiff notes, "Defendants are asking the Court to reduce their contempt sanction because they elected to spend their ill-gotten revenues defending this action, in which it is now undisputed that they were violating the Illinois Cable Piracy Act and in contempt of this Court's binding injunction." Pl.'s reply 6-7. Plaintiff's point is well taken. Defendants' profits are neither reliably calculated by Defendants nor relevant to the proper sanction. Defendants should not have been collecting any revenues from Russian-language programming after February 19, 2009. That Defendants may have incurred costs, including legal fees, in providing programming they had been ordered to disconnect, will not operate in their favor in calculating the proper sanction for their continued violation of the Court Order and resulting gain.

Therefore, Defendants are ordered to pay the following amount in civil contempt sanctions to Plaintiff (1) $57,416.09 for attorneys' fees and costs, as ordered on June 24, 2010; and (2) $73,958.67, which is the amount Defendants received by violating the preliminary injunction.